THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

CONNIE STEELE, AS MOTHER
AND NEXT OF KIN OF PHILLIP
T. CAMERON, DECEASED                                                      PLAINTIFF

V.                                          NO. 3:07 CV 00197 GTE

GRAHAM L. CROOK, HERTZ RENTAL
CAR LLC, HERTZ CORPORATION AND
AMERICAN FAMILY MUTUAL INSURANCE
COMPANY, AS UNINSURED MOTORIST CARRIER                      DEFENDANTS

## MEMORANDUM OPINION GRANTING SEPARATE DEFENDANT AMERICAN FAMILY MUTUAL INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.  FACTUAL BACKGROUND

### A.     PROCEDURAL HISTORY

This lawsuit arises out of an automobile accident that occurred on December 24, 2004, on Interstate-55 south of West Memphis, Crittenden County, Arkansas. (Complaint, pp.1-2.)   It is undisputed that the Plaintiff's decedent, Phillip T. Cameron, was killed as a result of injuries sustained in the accident.   Plaintiff Connie Steele, the mother of the deceased, has filed this lawsuit against Graham Crook, Hertz Rental Car LLC, Hertz Corporation and American Family Mutual Insurance Company.  (Complaint, pp.2-3.)  Plaintiff alleges that Graham Crook was negligent in causing the 2004 automobile accident.  (Complaint, pp.3-4.)  Plaintiff alleges that Hertz Rental Car LLC and Hertz Corporation ("the Hertz Defendants") are vicariously liable for the actions of Mr. Crook who, according to Plaintiff, was acting within the course and scope of his authority to operate a rental vehicle.

(Complaint, pp.4-5.)   Plaintiff has sued her own underinsured motorist carrier, American Family Mutual Insurance Company ("American Family"), alleging that Crook and/or the Hertz Defendants were underinsured at the time of the December 2004 accident.   Although Plaintiff alleges that Crook and/or the Hertz Defendants were underinsured at the time of the accident, she has never articulated, in any of her prior pleadings, the amount of liability coverage available to any of these Defendants at the time of the accident.

Currently before the Court is a Motion for Partial Summary Judgment filed by American Family.   In its Motion, American Family seeks a ruling that the limits of its underinsured motorists coverage are to be reduced to the extent that Plaintiff collects from either or both Graham Crook and the Hertz Defendants.   American Family further seeks a ruling that any underinsured motorists coverage it provides is excess to that provided by GEICO General Insurance Company.   Plaintiff Connie Steele failed to respond to American Family's Motion.   Accordingly, all material facts asserted by American Family are deemed admitted.

In order to address American Family's Motion, it is necessary for the Court to first provide certain background information.

## B.   FACTS OF ACCIDENT

The accident at issue in this case undisputedly occurred as Plaintiff's decedent, Phillip Cameron, was traveling through the State of Arkansas on his way from Indianapolis, Indiana, to New Orleans, Louisiana.   (Kayla Jefferson Depo. pp.16-17).   At the time of the accident, Cameron was traveling to New Orleans with

his fiancé Kayla Jefferson to meet her family, who resided in Louisiana.  (Kayla Jefferson Depo. pp. 15-16).  Cameron and Jefferson were traveling in a 2003 Dodge Neon owned by Jefferson.  (Kayla Jefferson Depo. p.15.)  According to Jefferson, she and Cameron were taking turns driving, and she was driving as they were passing through Arkansas.  According to the Jefferson, the accident occurred as she was driving south on Interstate-55 at approximately 6:00 or 7:00 a.m.  (Kayla Jefferson Depo. p.16.)

Jefferson related that, as she was traveling southbound on Interstate-55, a semi driving in front of her hit the brakes suddenly.  (Kayla Depo. p.17.)  Jefferson related that, when the semi applied its brakes, she decided to go around the truck by switching from the right to the left hand lane.  (Kayla Jefferson Depo. pp. 17, 85, 88.)  As she was entering the left hand lane and began going around the semi, Jefferson realized the road was covered with ice and attempted to apply her brakes. (Kayla Jefferson Depo. pp. 17, 46, 48.)  When she applied the brakes, Jefferson lost control of the vehicle and began traveling toward the oncoming lanes of traffic. (Kayla, Jefferson Depo. pp. 48, 88.)

When Jefferson lost control of the vehicle Cameron, grabbed the wheel and was able to keep the vehicle from going into the oncoming traffic lane.  (Kayla Jefferson Depo. p.88.)  However, the vehicle still ran off the road, coming to rest in a ditch off the shoulder of the southbound lane.  (Kayla Jefferson Depo. pp.48, 88.)

After the vehicle ran off the road, an unidentified gentleman came over and offered assistance.  According to Jefferson, the gentleman indicated that he was

going to get a chain to help her pull her vehicle out of the ditch and back onto the roadway. (Kayla Jefferson Depo. p.17.) At approximately the same time, a second vehicle, going the opposite direction on the Interstate, ran off the road. (Kayla Jefferson Depo. p.17.) While Jefferson was on the side of the road, police pulled up and advised her and Cameron to walk to the nearest exit to avoid the risk of injury. (Kayla Jefferson Depo. p.17.) Due to the freezing temperatures, however, Jefferson and Cameron got back into their vehicle and turned on the heater. (Kayla Jefferson Depo. p.17.) Once Jefferson and Cameron had gotten back in the vehicle, a minister pulled over and offered to help them push the vehicle back onto the roadway. (Kayla Jefferson Depo. p.17). Jefferson and Cameron briefly got out of the car to speak with the minister, who had come out to meet them near the edge of the road. (Kayla Jefferson Depo. pp.17-18, 96.) At the time they went to meet the minister, it is undisputed that Kayla Jefferson's car was still running. (Kayla Jefferson Depo. p.96.) Jefferson and Cameron were speaking to the minister outside the vehicle when Cameron instructed Jefferson to get back in the vehicle and put the car in reverse so that he and the minister could push the vehicle out of the ditch. (Kayla Jefferson Depo. pp.17-18.) Jefferson was getting back in the car when she and Cameron were hit by the third vehicle which had run off the road. (Kayla Jefferson Depo. p.18.) Jefferson was approaching the vehicle at the time of the accident and does not recall, if at the time she was hit, she had actually opened the car door. (Kayla Jefferson Depo. p.53.)

The next thing Jefferson recalls, she woke up at the scene with Cameron laying on top of her. (Kayla Jefferson Depo. p.18.) Cameron was pronounced dead at the scene following the accident. (Kayla Jefferson Depo. p.24.)

According to Plaintiff's Complaint, the vehicle which hit Phillip Cameron was owned by the Hertz Defendants and operated by Graham L. Crook, who had presumably rented the vehicle. According to the allegations in Plaintiff's Complaint, Crook, like Kayla Jefferson, was traveling southbound on Interstate-55 when he lost control of the vehicle due to icy road conditions. (Complaint, pp.3-4). According to Plaintiff, when Crook lost control of the vehicle, he slid off the roadway striking Cameron and other pedestrians. (Complaint, pp.3-4). Plaintiff alleges that one or both of the Hertz Defendants are liable for Crook's actions on the basis that these entities rented Crook the vehicle he was operating at the time of the 2004 accident.

## C.  INSURANCE COVERAGE FOR COLLISION

Plaintiff has made a claim against American Family seeking to recover under a policy of insurance issued to the Plaintiff herself. Although Plaintiff has only filed suit against American Family, American Family maintains in a recent Motion for Partial Summary Judgment that it did not provide the primary underinsured motorists coverage for the injuries allegedly sustained by Plaintiff. To the contrary, American Family maintains that the primary underinsured motorists coverage for Plaintiff's decedent's injuries was provided by GEICO General Insurance Company

("GEICO") and that any underinsured motorists coverage it provided is excess to that of GEICO.

At the time of the 2004 accident, Plaintiff's decedent was traveling in a vehicle owned by Kayla L. Jefferson and insured by GEICO General Insurance Company.  It is undisputed that the vehicle listed on the declarations page was the same 2003 Dodge Neon involved in the accident, which was owned by Jefferson, an Indiana resident.  As is made clear by the policy itself, it was issued and delivered in the State of Indiana.  (GEICO Policy at Declarations Page.)  The policy issued by GEICO included underinsured motorist coverage providing bodily injury underinsured motorist limits of $50,000 per person per accident.  (GEICO Policy at Declarations Page.)   The underinsured motorist coverage section of the GEICO policy includes the following relevant definitions

1.   "Insured" means:

    (a)    you;

    (b)    your relatives;

    (c)    any other person occupying an insured auto; or

    (d)    any person who is entitled to recover damages because of bodily injury sustained by an insured under (a), (b) and (c) above.

    If there is more than one insured, our limit of liability will not be increased.

2.   "Insured Auto" is an auto:

    (a)    Described in the declarations and covered by the bodily injury liability coverage of this policy.

      (b)     Temporarily substituted for an insured auto when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

      (c)     Operated by you or your spouse if a resident of the same household.

             But the term "insured auto" does not include:

          (i)     An auto used to carry passengers or goods for hire except in a car-pool.

          (ii)     An auto being used without the owner's permission.

          (iii)     Under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an insured.

    3.     "Occupying" means:

      (a)     in;

      (b)     upon;

      (c)     entering into; or

      (d)     alighting from.

(GEICO Policy at UIM Endorsement.)

The GEICO policy defines an underinsured motor vehicle, in part, as follows:

     An insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's Underinsured Motorist Coverage at the time of the accident.

(GEICO Policy at UIM Endorsement.)

    Under its policy, GEICO will pay losses which an insured is legally entitled to recover for bodily injury caused by an accident arising out of the ownership,

maintenance or use of an underinsured vehicle. (GEICO Policy at UIM Endorsement.) GEICO, like all underinsured motorists carriers, will not pay until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlement. (GEICO Policy at UIM Endorsement.) The GEICO policy at issue in this case provides that the amount payable under its underinsured motorist coverage will be reduced, in part, "by all amounts . . . paid or payable by or for all persons or organizations liable for the injury. . . ." (GEICO Policy at UIM Endorsement.) Finally, the GEICO underinsured motorist coverage includes the other insurance clause:

> When an insured occupies an auto not described in this policy, this insurance is excess over any other similar insurance available to the insured. The insurance which applies to the occupied auto is primary.

> Except as provided above, if the insured has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the higher of the applicable limits of liability of this insurance and the other insurance. If the insured has other insurance against a loss covered by the Underinsured Motorist provisions of this amendment, we will not be liable for more than our pro rata share of the total coverage available.

(GEICO Policy at UIM Endorsement.)

Although it would not generally be of significance in the context of an underinsured motorists claim, the GEICO policy defines an insured under the liability portion of the coverage as including, among others, "any other person using the [insured] auto with [the policyholder's] permission." (GEICO Policy at p.4 of 15.)

Despite the fact that Plaintiff's decedent was traveling in Ms. Jefferson's vehicle, which was insured by GEICO, at the time of the accident, Plaintiff has maintained the instant lawsuit, for purposes of seeking underinsured motorist coverage, exclusively against American Family.   The American Family policy at issue in this case was issued to Connie Steele, Phillip Cameron's mother. (American Family Policy at declarations page).   The policy was issued and delivered to Ms. Steele's address in Indianapolis, Indiana.   (American Family policy at Declarations Page.)   The American Family policy, like the GEICO policy, provides underinsured motorist coverage.   (American Family policy at Declarations Page.) The underinsured motorist coverage issued by American Family has limits of $100,000 per person per accident.   (American Family policy at Declarations Page.) The vehicle described in the declarations of the American Family policy is a 2001 Chevrolet Cavalier.   (American Family policy at Declarations Page.)   It is undisputed that this vehicle was not the one involved in Plaintiff's decedent's accident.

The American Family policy, like the GEICO policy, provides that American Family will pay compensatory damages for bodily injury which an insured person is legally entitled from the owner or operator of an underinsured motor vehicle. (American Family Policy at UIM Endorsement.)   The policy, like many other underinsured motorists policies, provides that American Family will only pay under its coverage after the limits of liability under any bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.   (American

Family Policy at UIM Endorsement.)  The underinsured motorists coverage in the American Family policy contains the relevant definitions of an "insured person" and an "underinsured motor vehicle":

1.    Insured person means:

    a.    You or a relative.

    b.    Anyone else occupying your insured car.

    c.    Anyone, other than a person or organization claiming by right or subrogation, entitled to recover damages due to bodily injury to you, a relative or another occupant of your insured car.

But the following are not insured persons:

    a.    Any person, other than a relative, using your insured car without your permission.

    b.    Any person, other than a relative, using your insured car with your permission, but who exceeds the scope of that permission.

    c.    Any person using a vehicle without the permission of the person having lawful possession.

    d.    Any person using a vehicle with the permission of the person having lawful possession, but who exceeds the scope of that permission.

    * * *

3.    Underinsured motor vehicle means a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the limits of liability of this Underinsured Motorists coverage.

Underinsured motor vehicle, however, does not mean a vehicle:

    a.    Insured under the Liability coverage of this policy.

b.   Insured at the time of the accident by a liability bond or policy with bodily injury liability limits below the minimum specified by the financial responsibility law of the state in which your insured car is principally garaged.

c.   Owned by or furnished or available for the regular use of you or a relative.

d.   Owned or operated by a governmental unit or agency.

e.   Owned or operated by a self-insurer as considered by any financial responsibility law, motor carrier law, or similar law.

f.   Which is insured by a bodily injury liability bond or policy at the time of the accident, but the bonding or insuring company denies coverage or is or becomes insolvent.

(American Family Policy at UIM Endorsement.)

American Family's underinsured motorist coverage, like the GEICO policy, provides that the limits of liability of the coverage "will be reduced by . . . a payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for a loss caused by an accident with an underinsured motorist vehicle." (American Family Policy at UIM Endorsement.) The American Family policy also includes the following other insurance clause:

If there is other similar insurance on a loss covered by this endorsement, we will pay our share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance.

(American Family Policy at UIM Endorsement.)

## II  DISCUSSION

In the instant case, Separate Defendant American Family has moved for partial summary judgment and seeks several findings from the Court.  First, American Family maintains that Indiana law applies to determine any liability of it to the Plaintiff.  American Family maintains that, pursuant to the terms of the policy it issued to Plaintiff and Indiana law, its maximum liability is the difference between the amount of liability coverage issued to any tortfeasor or tortfeasors found to be liable for Plaintiff's damages and the amount of its $100,000 underinsured motorists limits.  American Family seeks partial summary judgment from the Court reducing any recovery by Plaintiff against it to the extent of any liability insurance coverage available to satisfy any recovery by Plaintiff against separate Defendant Graham Crook and/or the Hertz Defendants.

Second, American Family seeks a ruling that, pursuant to the terms of the policies of insurance issued to both Kayla Jefferson and Connie Steele, the GEICO policy which provided coverage for Kayla Jefferson's vehicle that was involved in the accident is primary over any underinsured motorists coverage issued by American Family.  American Family seeks partial summary judgment finding that it does not have any liability for Plaintiff's damages except to the extent that Plaintiff recovers damages in excess of the limits of any underlying liability coverage plus the $50,000.00 limits of the coverage issued by GEICO.

As previously noted, Plaintiff Connie Steele failed to object to American Family's request for partial summary judgment.

A.    CHOICE OF LAW

Plaintiff Connie Steele makes a claim for contractual rights pursuant to the insurance policy issued to her by American Family Mutual Insurance Company. The federal court's interpretation of an insurance policy in a diversity case such as this is governed by state law.  <u>National Union Fire Insurance Company of Pittsburg v. Terra Industries, Inc.</u>, 346 F.3d 1160, 1164 (8th Cir. 2003).  In a diversity case, the federal court applies the choice-of-law rules of the forum state.  <u>U.S. Fire Insurance Company v. Kresser Motor Service, Inc.</u>, 26 F.3d 91, 94 (8th Cir. 1994).

Traditionally, in Arkansas, choice-of-law questions regarding insurance coverage have been resolved by applying the law of the state where the insurance contract was formed.  <u>Southern Farm Bureau Casualty Insurance Company v. Craven</u>, 89 S.W.3d 369, 372 (Ark. App. 2002).  However, Arkansas courts now also consider which state has the most significant contacts to the issue at hand. <u>Southern Farm</u>, 89 S.W.3d at 372.  In conducting this analysis, the courts consider the following contacts: (1) the place of contracting; (2) the place of the negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.  <u>Southern Farm</u>, 89 S.W.3d at 372.

It is undisputed that the American Family policy under which Plaintiff seeks to recover was issued in the State of Indiana (American Family policy at declarations page).  It is further undisputed that Plaintiff was, at the time of the accident, a resident of the State of Indiana (Complaint at pp.1-2).  Plaintiff's

13

decedent, like the Plaintiff herself, was also a resident of the State of Indiana.  The vehicle covered under the declarations provisions of the declarations portion of the policy, a 2001 Chevrolet Cavalier, was principally garaged in the State of Indiana (American Family policy at declarations page).  The American Family policy issued to the Plaintiff is described as an Indiana Family Car Policy and contemplates that coverage will be governed by Indiana law.

In addition to the American Family policy, the GEICO policy issued to Kayla Jefferson was also delivered in the State of Indiana (GEICO policy at declarations page).  At the time it was issued, Kayla Jefferson was a resident of the State of Indiana (GEICO policy at declarations page).  The vehicle covered under the policy, a 2003 Dodge Neon, was principally garaged in the State of Indiana (GEICO policy at declarations page).  The GEICO policy, like the American Family policy, includes provisions specific to the requirements of Indiana law.

In the instant case, it is clear that Indiana has the most significant contacts to the issues at hand.  The only contact, in fact, that Arkansas has is that the accident which forms the basis of Plaintiff's Complaint occurred here.  For all these reasons, under either the traditional approach of *Lex Loci Contractus* or the Most Significant Contacts test, Indiana law should be applied to resolve the extent, if any, to which Plaintiff is entitled to coverage under the policies of insurance issued by American Family and GEICO.

**B.    REDUCTION OF UNDERINSURED MOTORISTS LIMITS TO THE EXTENT OF RECOVERY FROM LIABILITY COVERAGE.**

Under Indiana law, the amount of an underinsured motorists carrier's liability as it relates to the limits of a tortfeasor's liability coverage is governed by statute. The relevant statute, Indiana Code Annotated § 27-7-5-5, provides, in part, as follows:

> (c)    The maximum amount payable for bodily injury under uninsured or underinsured motorist coverage is the lesser of:
>
> > (1)    the difference between:
> >
> > > (A)    the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury; and
> > >
> > > (B)    the per person limit of uninsured or underinsured motorist coverage provided in the insured's policy; or
> >
> > (2)    the difference between:
> >
> > > (A)    the total amount of damages incurred by the insured; and
> > >
> > > (B)    the amount paid by or for any person or organization liable for the insured's bodily injury.

Ind. Code Ann. § 27-7-5-5.

In interpreting the aforementioned statute, the Indiana Court of Appeals has noted that, as a general matter, Indiana statutes governing UM/UIM insurance are considered a part of every automobile insurance policy as if written therein. Kinslow v. GEICO Insurance Co., 858 N.E.2d 106, 114 (Ind. App. 2006). Although the Indiana courts have recognized that the statute does not provide a set formula for

calculating setoffs in all cases, it does establish maximum and minimum parameters for the amount of recovery a plaintiff is entitled to receive as a result of a UM or UIM claim. Id.  In construing Indiana Code Ann. § 27-7-5-5, the Indiana courts have concluded that the statute is clear and unambiguous and not open to interpretation.  Id.  In Kinslow, the Court held that, under the statute, the "*maximum* UM or UIM bodily injury benefits to which an insured is entitled as the result of an accident is the *lesser* of the difference between the amount already recovered by the insured less the per person limit of UM/UIM coverage in the insured's policy, *or* the difference between the total amount of damages incurred by the insured and the amount already recovered by the insured." Id. (Emphasis in original).

In the instant case, Connie Steele has a policy of underinsured motorists coverage with American Family which has limits of $100,000 per person per accident.  Pursuant to that policy and the requirements of Indiana Code Annotated § 27-7-5-5, the most she can recover, regardless of the amount of any actual damages is the difference in the limits of her UIM coverage and the amount she recovers from Graham Crook and the Hertz Defendants in the event she establishes their liability.  Based upon the foregoing, the Court hereby grants American Family's Motion for Partial Summary Judgment and finds that any recovery by Plaintiff against American Family at the trial of this matter is to be limited to the difference between her $100,000 policy limits and the total amount she recovers from Crook and/or the Hertz Defendants.

C.     THE RELATIONSHIP BETWEEN GEICO AND AMERICAN MODERN'S UNDERINSURED MOTORISTS COVERAGE.

1.     Underinsured Motorists Coverage Under the GEICO Policy

Under the terms of the policy it issued to Kayla Jefferson, GEICO agreed to provide $50,000 in underinsured motorists coverage per person per accident for losses "which an insured is legally entitled to recover for bodily injury caused by an accident arising out of the ownership, maintenance or use of an underinsured vehicle." (GEICO Policy at Declarations Page, UIM Endorsement.)      The policy defines an "insured auto" as including, among other things, the vehicle listed in the declarations portion of the coverage.  (GEICO Policy at UIM Endorsement.)  It is undisputed that the vehicle involved in the 2004 accident at issue in the case was the 2003 Dodge Neon described in the Declarations Page of Kayla Jefferson's policy.

The policy defines an "insured," for purposes of underinsured motorists coverage as anyone "occupying" an "insured auto." (GEICO Policy at UIM Endorsement.)  The GEICO policy describes "occupying" as including individuals "alighting from" and "entering into" an insured vehicle (GEICO policy at UIM endorsement).  The policy defines an "insured" for purposes of liability coverage as anyone "using" an insured vehicle (GEICO policy at p.4 of 15).

Under Indiana law, an individual is entitled to underinsured motorist coverage if he fits either the definition of an "insured" found under the liability or the underinsured portion of the policy.   Ind. Code Ann. § 27-7-5-2; Spencer v. Liberty Mut. Ins. Corp., 381 F.Supp.2d 811 (S.D. Ind. 2005); American States Ins. Co. v. Braden, 625 N.E.2d 1252 (Ind. App. 1993); Harleysville Lake States Ins. Co.

v. Hostetler, 2006 WL 360857 (N.D. Ind. 2006).  Under Indiana law, if a person qualifies as an insured under the liability section of the policy, he must also qualify under the uninsured/underinsured motorist section or the insurance contract will be held to violate Indiana public policy.  Smith v. Allstate Ins. Co., 681 N.E.2d 220, 222 (Ind. App. 1997); American States Ins. Co. v. Braden, 625 N.E.2d 1252 (Ind. App. 1993); Harleysville Lake States Ins. Co. v. Hostetler, 2006 WL 360857 (N.D. Ind. 2006).  Indiana law provides that a passenger in a vehicle is "using" the vehicle for purposes of determining whether he is an "insured" under the liability portion of a policy and, thus, also an "insured" for purposes of UM & UIM coverage.  American Family Mut. Ins. Co. v. Federated Mut. Ins. Co., 775 N.E.2d 1198 (Ind. App. 2002); Spencer v. Bridgewater, 757 N.E.2d 208 (Ind. App. 2001).

In several cases over the last few years, Indiana state courts and federal courts interpreting Indiana law have addressed when an individual is and is not "using" or "occupying" an insured vehicle for purposes of UM and UIM coverage.  In each of the cases considered, the courts have held that, where the actions of a driver or passenger are reasonably contemplated in connection with operation of a vehicle, those actions constitute use of the vehicle for purposes of determining whether uninsured or underinsured motorists coverage is available.

In the case of Monroe Guar. Ins. Co. v. Campos, 582 N.E.2d 865 (Ind.App. 1991), the Indiana Court of appeals sought to determine whether a tow truck driver was "using" his employer's tow truck for purposes of recovering under his employer's uninsured motorists coverage.   In the case, the driver had been

dispatched to a police traffic stop to tow a vehicle. Id. at 866. The driver arrived on scene, pulled his tow truck into a parking lot, and exited to confer with the police officer responsible for the stop. Id. The officer advised that he was awaiting the results of a breathalyzer examination and that, depending on the results, the driver may have been needed to tow a tractor-trailer located on the side of the road. Id. The officer then directed the driver to wait in the back seat of the police vehicle. Id. The driver briefly returned to the tow truck to answer a page from his employer. Id. He then returned to the police vehicle. Monroe Guar. Ins. Co. v. Campos, 582 N.E.2d 865, 866 (Ind.App. 1991). Shortly thereafter, the officer informed the driver that the vehicle would need to be towed. Id. The driver then exited the police vehicle with the intent of proceeding to the vehicle to be towed to determine how it could safely be removed from the roadway. Id. As he was exiting the police vehicle, the driver was struck and severely injured by an automobile driven by an uninsured motorist. Id.

Following the accident, the driver submitted a UM claim to his employer's automobile insurer. Id. The insurer instituted a declaratory judgment action seeking a ruling that it did not provide coverage for the loss on the basis that the driver was neither "using" or "occupying" the vehicle at the time of the accident. Id. Under the foregoing facts, the court found as a matter of law that the driver was, at all times relevant, "using" the insured vehicle. Monroe Guar. Ins. Co. v. Campos, 582 N.E.2d 865, 868 (Ind.App. 1991). The court, essentially, found that the activity of the driver at the time of the accident was essential to the operation

of the vehicle and thus satisfied the requirement of use.  Id.  Because the driver was using the vehicle, he was, under state law, an insured for purposes of both liability and uninsured coverage at the time of the accident.  Id.  Finding that the driver was an insured, the court granted a motion for summary judgment filed by the driver seeking uninsured motorists coverage under his employer's policy.  Id.  The finding, which was appealed by the insured, was affirmed on appeal by the Indiana Court of Appeals. Id.

A second similar case is that of Spencer v. Liberty Mut. Ins. Corp., 381 F. Supp.2d 811 (S.D. Ind. 2005).  In the case, Spencer was driving a tractor-trailer hauling a load of fishing boats for his employer. Id. at 813.  As he was traveling, a pick-up truck passed him, lost control, and drove beneath another tractor-trailer traveling about 100 feet in front of him. Id.  Spencer pulled his truck onto the shoulder of the highway, left his engine running, put on his emergency flashers, and exited his truck.  Id.  Over the next several minutes, Spencer went back and forth between his tractor-trailer and the pick-up a number of times getting various items in an attempt to assist a passenger in the pick-up who was trapped in the pickup.  Id. at 814.  Spencer was attempting to use a jack to free the passenger from the pickup when he was hit by a van, rendering him a quadriplegic.  Id.  Spencer brought a claim against his employer's uninsured motorists carrier which was denied.  Spencer then filed suit against the carrier in a case which was eventually resolved on a motion for summary judgment.  Spencer v. Liberty Mut. Ins. Corp., 381 F. Supp.2d 811 (S.D. Ind. 2005).

The issue in the case was whether, under Indiana law Spencer was "occupying" the truck as was required in order to be deemed an insured under the UM portion of the policy. <u>Id.</u> at 815. The policy, for purposes of liability coverage, defined an insured as anyone "using" the vehicle with permission. <u>Id.</u> As in the <u>Campos</u> case, the Court noted that, provided Spencer met the definition of an insured under the liability portion of the policy, he would also be deemed an insured for purposes of UIM coverage. <u>Id.</u> The Court then examined the issue and found, as a matter of law, that Spencer was "using" the truck at the time of the accident and thus entitled to UM coverage. <u>Id.</u> at 816-17. In coming to its conclusion, the Court found that Spencer was acting in a manner intended or reasonably within the contemplation of his employer's auto coverage when he was injured while attempting to rescue the injured passenger and that, as a result, his rescue efforts constituted "use" of the insured truck under Indiana law. <u>Id.</u> Because he was using the vehicle, Spencer was, as a matter of law, entitled to coverage for any damages caused by the alleged uninsured motorist. <u>Id.</u>

In the instant case, the GEICO policy, like the policies at issue in the <u>Campos</u> and <u>Spencer</u> case, defines an insured, for purposes of UIM coverage as someone "occupying" the insured vehicle. For purposes of liability coverage, the policy defines an insured as someone "using" the vehicle.

In this lawsuit, there can be no question that, using either the definition found in the UIM portion or the liability portion of the policy, Plaintiff's decedent was an insured. First of all, the undisputed evidence in this case, which comes in

the form of the testimony of Kayla Jefferson, was that she was near her car and about to enter it at the time of the accident (Kayla Jefferson depo. pp.17-18). Jefferson was close enough to the vehicle that she may have opened the door prior to the collision (Kayla Jefferson depo., p.53).  At the time of the accident, Plaintiff's decedent, Phillip Cameron, was headed toward the car with the intention of pushing it out of the ditch and was close enough to Jefferson to grab her an push her out of the way (Kayla Jefferson depo., pp.17-18).   Under the undisputed circumstances of this case, Cameron was "entering into" and thus "occupying" the insured vehicle at the time he was killed.  For this reason, and all the others set forth herein, Cameron is entitled to underinsured motorists coverage under the GEICO policy issued to Kayla Jefferson.

Even if he was not occupying the insured vehicle at the time of the accident, which he was, under the interpretation given by the Indiana courts, Cameron was "using" the vehicle at the time he was killed.  Cameron was riding as a passenger in the vehicle and, to a limited degree, operating the vehicle at the time it ran off the road and into the ditch.  (Kayla Jefferson depo., p.88).  Over the next few minutes, Cameron's activities were devoted exclusively toward attempting to get the vehicle out of the ditch so that he and Kayla Jefferson could continue their trip to New Orleans (Kayla Jefferson depo., pp.17-18, 95).  At the time he was injured, Cameron was about to begin pushing the vehicle in an attempt to get it back on the roadway (Kayla Jefferson depo., pp.17-18).  Pushing a vehicle back on the road after one slides off due to ice is undisputedly within the reasonable contemplation of an auto

insurer as related to the use of a vehicle and was, following the accident, essential to the use of the vehicle.  For this reason, Cameron was, as a matter of law, "using" the insured vehicle at the time of the collision and, as a result, entitled to underinsured motorists coverage under GEICO's policy.

### 2.    Coordination of Coverage Under the GEICO and American Family Policies

In its Motion for Partial Summary Judgment, American Family contends that any underinsured motorists coverage provided by GEICO is primary over any and all coverage American Family provides.  In order to determine the relationship between the two policies, the Court must examine Indiana law and the other insurance clauses found in the GEICO and American Family policies.

Indiana applies fairly standard rules when construing competing other insurance clauses.  Where two other insurance clauses can be interpreted consistently, they will be so interpreted and enforced as written.  <u>Citizens Ins. Co. v. Ganschow</u>, 859 N.E.2d 786 (Ind. App. 2007). Where the clauses are in conflict, however, they will be declared mutually repugnant and any carriers liable for a loss will share on a pro rata basis.  <u>Id.</u>

The other insurance clause in the GEICO policy issued to Kayla Jefferson, who owned 2003 Dodge Neon involved in Plaintiff's decedent's accident, states as follows:

> When an insured occupies an auto not described in this policy, this insurance is excess over any other similar insurance available to the insured.  The insurance which applies to the occupied auto is primary.

> Except as provided above, if the insured has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the higher of the applicable limits of liability of this insurance and the other insurance.   If the insured has other insurance against a loss covered by the Underinsured Motorist provisions of this amendment, we will not be liable for more than our pro rata share of the total coverage available.

(Exhibit B, GEICO policy at UIM endorsement).

The other insurance clause in the American Family policy issued to Plaintiff

Connie Steele stated in full as follows:

> If there is other similar insurance on a loss covered by this endorsement, we will pay our share according to this policy's proportion of the total limits of all similar insurance.   But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance.

(Exhibit C, American Family policy at UIM endorsement).

It is undisputed that the accident at issue in this lawsuit involved a vehicle owned by Kayla Jefferson and specifically described in GEICO's coverage.   It is further undisputed that the vehicle involved in the accident was not owned by Plaintiff Connie Steele, the named insured in the American Family Policy at issue.

The Indiana Court of Appeals has recently had the opportunity to consider almost identical other insurance clauses in a case based upon almost identical facts in Citizens Ins. Co. v. Ganschow, 859 N.E.2d 786 (Ind. App. 2007).   In the case, Ganschow was involved in a motor vehicle accident while he was a passenger in a vehicle that was owned by Susan Messer and operated by Samantha Kinser.   Id. at 787-88.   The accident was allegedly caused by the negligence of an uninsured motorist.   Id. at 788.   Ganschow claimed that he was injured in the accident and

sought UM under separate automobile insurance polices issued by Citizens Insurance and Standard Mutual.  Id.  Ganschow's parents were the named insureds under a policy issued by Citizens Insurance, and Standard Mutual insured the vehicle's owner.  Id.  The sole issue in the case was the coordination of the two insurer's other insurance clauses, including the extent to which either or both carriers had obligations to Granschow for the loss.

The Standard Mutual policy, issued to the owner of the vehicle involved in the accident, contained the following other insurance clause:

> With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

> Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

Citizens Ins. Co. v. Ganschow, 859 N.E.2d 786, 788 (Ind. App. 2007).  The Citizens policy, issued to Granschow's parents, included the following other insurance clause:

> 1. Any recovery for damages for "bodily injury" or "property damage" sustained by an "insured" may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

Id.

Confronted with the foregoing clauses the Indiana Court of Appeals determined that the Standard policy provided the primary coverage for the loss and that the Citizens policy provided excess coverage only. Id. at 794. In coming to its conclusion, the court found that the provisions in the Standard and Citizens policies were not mutually repugnant and could be interpreted consistently. Id. The Court noted that, although Standard's other insurance clause included a pro rata provision, that provision only applied whenever "similar" insurance was available to its insured. Id. The Court interpreted Standard's pro rata clause to apply only in the context where Standard offered coverage on an excess basis. The Court found that, because the accident involved a vehicle owned by Standard's named insured, the excess provision was not triggered. Id. In construing the two clauses, the Court stated, in part, as follows:

> Because Standard Mutual's named insured was the owner of the vehicle involved in the accident, the condition required to trigger the excess provision of Citizen Insurance's "other insurance" clause was satisfied. And Standard Mutual's was not. That said, it is apparent that the policies' respective provisions in this case are capable of being harmonized and permit us to give effect to the parties' intent. Indeed, the parties and the trial court all agree that the excess provision set forth in the first paragraph of Standard Mutual's "other insurance" clause does not apply, but Citizen Insurance's does. Hence, contrary to Standard Mutual's contention that the "other insurance" clauses at

issue establish a conflict, it is apparent that Standard Mutual provides UM coverage for Ganschow's claims on a primary basis and Citizens Insurance's UM covers the excess.

Citizens Ins. Co. v. Ganschow, 859 N.E.2d 786, 794 (Ind. App. 2007).

In the instant case, the other insurance clauses are, for all intents and purposes, identical to those considered in the Ganschow decision. GEICO provided coverage for the owner of the vehicle involved in the accident and included within its coverage a pro rata clause. However, that clause, on its terms, only applies in the context of non-owned autos. The GEICO policy expressly provides that the policy covering the auto occupied at the time of a collision is primary. The excess pro-rata provision in the GEICO policy is not triggered because the vehicle involved in the accident was owned by GEICO's insured and was the vehicle specifically described in the policy's declarations. However, the excess provision in the American Family policy is triggered because the vehicle involved in the collision was not owned by an American Family insured. The Court finds as a matter of law, GEICO is primary to any coverage issued by American Family.

### III.  CONCLUSION

Based upon its examination of the undisputed facts of this case, the insurance policies at issue, and choice of law considerations, the Court hereby grants American Family's Motion for Partial Summary Judgment. The Court finds that American Family's underinsured motorists limits are reduced to the extent of any recovery by Plaintiff from the alleged tortfeasors in this case, Graham Crook and the Hertz Defendants. The Court further finds that the separate underinsured

motorists policy issued by GEICO offers primary coverage to that of American Family.  By virtue of the foregoing, any recovery in this case against American Family at the trial of this matter will be reduced (1) to the extent of any recovery from the tortfeasors or their insurers and (2) in the amount of the $50,000.00, the per person per accident limit of GEICO's coverage.  It is only to the extent that Plaintiff recovers against the tortfeasors in an amount in excess of the limits of their available coverage plus the $50,000.00 limits of GEICO's coverage that American Family has any potential liability for Plaintiff's damages arising from the December 2004 accident at issue in this case.

Accordingly,

IT IS HEREBY ORDERED that American Family's Motion for Partial Summary Judgment (Docket No. 22) be, and it is, hereby GRANTED.

IT IS SO ORDERED this 31st day of December, 2008.

__/s/Garnett Thomas Eisele _____

UNITED STATES DISTRICT JUDGE